## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB SILVER on behalf of himself and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| *Plaintiff*, | |
| v. | **2:20-cv-2478** |
| LIVEWATCH SECURITY, LLC d/b/a BRINKS HOME SECURITY f/k/a BOLSTER LLC d/b/a SAFEMART; MONITRONICS INTERNATIONAL, INC. d/b/a BRINKS HOME SECURITY, | |
| *Defendants*. | |

Plaintiff Jacob Silver, on behalf of himself and all others similarly situated, brings this class action complaint against Defendants LiveWatch Security, LLC d/b/a Brinks Home Security f/k/a Bolster LLC d/b/a Safemart and Monitronics International, Inc. d/b/a Brinks Home Security, alleging as follows:

## NATURE OF THE ACTION

1.       This is a class action against Defendants LiveWatch Security, LLC d/b/a Brinks Home Security f/k/a Bolster LLC d/b/a Safemart ("LiveWatch") and Monitronics International, Inc. d/b/a Brinks Home Security ("Monitronics") (the two Defendants collectively, "Brinks Home Security" or "Defendants") for violations of the New York General Business Law §§ 349 and 350, breach of contract, and unjust enrichment.

2.       Plaintiff and the members of the Class he seeks to represent are all New York consumers whose accounts were charged by Brinks Home Security for a text messaging alert service known as Brinks Home Interactive Messaging powered by ASAPer ("Brinks Messaging"),

1

but who failed to receive the benefits of the service because of the intentional, deceptive and unconscionable conduct of Brinks Home Security.

3.     Since 2018, Plaintiff has been and continues to be charged a monthly fee for Brinks Messaging by Brinks Home Security.

4.     Brinks Home Security operates as a security company that provides alarm systems and alarm-monitoring services to customers throughout the United States.

5.     Brinks Home Security represents to its customers, including Plaintiff, that if their alarm systems are activated, Brinks Messaging will transmit text messages to their mobile telephones providing customers with a link to a portal that would allow them to deactivate the alarm.

6.     However, after adoption, the Brinks Messaging system routinely failed to transmit text messages to subscribers and for this or other reasons was internally discontinued/deactivated by Brinks Home Security no later than March 2019.

7.     Notwithstanding the fact that the service has been discontinued, Brinks Home Security has continued to collect fees for Brinks Messaging from its customers.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because it is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of $5 million, and which includes members whose state citizenship is diverse from that of Defendants.

9.     This Court has personal jurisdiction over Defendants LiveWatch and Monitronics because they transact business within the state of New York.

2

10.     Venue is proper because it was in this District that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.  *See* 28 U.S.C. § 1391(a)(1)-(2).

## PARTIES

11.     Plaintiff Jacob Silver is an individual residing in Woodmere, New York.

12.     Defendant LiveWatch Security, LLC is a Delaware limited liability company with a principal place of business located in Farmers Branch, Texas.

13.     LiveWatch is duly registered to do business as a foreign limited liability company in New York State.

14.     Upon information and belief, in 2015, LiveWatch was acquired by Defendant Monitronics International, Inc.

15.     Defendant Monitronics International, Inc. is a Delaware corporation with a principal place of business located in Farmers Branch, Texas.

16.     Monotronics is duly registered to do business as a foreign limited liability company in New York State.

## PLAINTIFF'S EXPERIENCE

17.     On November 17, 2011, Plaintiff entered into a LiveWatch Monitoring Agreement with Bolster LLC doing business as "Safemart" (the company that is now known as LiveWatch Security, LLC) for monitoring of his alarm security system.

18.     Since 2011, Plaintiff has continuously paid monthly for alarm monitoring services.

19.     In or about 2018, Plaintiff began receiving his monthly invoice for alarm monitoring services under the Brinks Home Security brand.

20.     Beginning in or about 2018, Plaintiff's monthly invoice included a new $2.95 charge for Brinks Messaging plus applicable sales taxes (on the $2.95 charge).  Plaintiff was not

aware that Brinks Messaging was added to his monthly invoice until after he was charged for the service.

21.     Plaintiff has paid for Brinks Messaging during all months since the Brinks Messaging charge first appeared on his monthly invoices.

22.     On at least three occasions since Mr. Silver was enrolled in Brinks Messaging, his alarm system was activated, but he did not receive a text from Brinks Messaging with a link to the portal that would allow him to cancel the alarm.

23.     Most recently, in or about or about February 2020, Mr. Silver's alarm system was activated, but he did not receive a text from Brinks Messaging.

24.     After the failure of Brinks Messaging in February 2020, Mr. Silver contacted Brinks' customer service to complain about the Brinks Messaging failures.  After speaking with several representatives by telephone, a representative of Brinks Home Security explained to Mr. Silver that the Brinks Messaging system had been discontinued/deactivated for some time due to technical problems.

25.     Plaintiff thus discovered he had been charged monthly (and continues to be charged) for Brinks Messaging despite the fact that Defendants no longer provide the service.

## ADDITIONAL FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

23.     Upon information and belief, in 2018, Monitronics acquired a license to do business as "Brinks Home Security."

24.     Upon information and belief, since at least 2018, Monitronics and LiveWatch have done business and present themselves to consumers collectively as Brinks Home Security.

25.     For example, as of May 28, 2020, LiveWatch maintains a webpage with Brinks-branded URL https://pages.brinkshome.com/livewatch-campaign and all consumers seeking to

purchase security systems and live alarm monitoring services are sent to a Brinks Home Security-branded webpage located at https://brinkshome.com/shop/systems?

26.     Moreover, customers of the Defendants received invoices and/or payment receipts for Brinks Messaging that identified the service provider as Brinks Home Security.

27.     Upon information and belief, beginning in 2018, all of Monitronics' and LiveWatch's consumer alarm monitoring services were rebranded as "Brinks Home Security."

28.     Upon information and belief, beginning in 2018, Defendants began charging a fee to consumers for Brinks Messaging.

29.     Upon information and belief, since at least 2018, Monitronics and LiveWatch centralized their billing, payment and alarm monitoring systems, including their billing and payment systems for Brinks Messaging.

30.     Upon information and belief, Defendants discontinued the use of and/or deactivated Brinks Messaging in March 2019 at the latest.

31.     Despite discontinuing/deactivating Brinks Messaging, Defendants continued to charge customers fees for Brinks Messaging.

32.     Upon information and belief, at all times material herein, Monitronics and LiveWatch have operated as a common enterprise that shares common ownership, management, address, office space, and employees, and commingles funds.

33.     Upon information and belief, at all times material herein, Monitronics and LiveWatch have operated as a common enterprise while engaging in unlawful conduct, including the violations of law described herein.

34.     In light of the foregoing, Defendants are jointly and severally liable for the acts or practices alleged herein.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action, on behalf of the following class, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure:

> Each person who, with regard to a property in New York State, has paid one or more fees to Brinks Home Security for Brinks Home Interactive Messaging powered by ASAPer after Brinks Home Security discontinued/deactivated the service

27.     The Class Period is defined as the limitations time period applicable under the claims to be certified.

28.     The following persons are expressly excluded from the Class:  (1) Defendants and their parent companies, subsidiaries, affiliates, and controlled persons; (2) officers, directors, agents, servants, or employees of Defendants, and the immediate family members of any such person; (3) all persons who make a timely election to be excluded from the proposed Class; (4) governmental entities; and (5) the Court to which this case is assigned and its staff.

29.     Plaintiff reserves the right to revise this class definition and to add subclasses as appropriate based on facts learned as the litigation progresses.

30.     This action may be maintained as a class action because there is a well-defined community of interests in the litigation and the proposed Class is easily ascertainable.

<u>Numerosity</u>

31.      Brinks describes itself "one of the largest and most trusted home security companies in the U.S." that "provide[s] cutting-edge products and alarm-monitoring services to more than 1 million customers throughout North America."  The Brinks Home Security Difference, https://brinkshome.com/about-us (last visited May 28, 2020).

32.     Given the size of Brinks' overall customer base and the fact that New York is, by any measure, a major market, Plaintiff approximates that the Class numbers in the tens of thousands or more.

33.     Joinder of all Class Members is therefore impracticable.

Common Questions Predominate

34.     This action involved common questions of law and fact applicable to each Class Member that predominate over questions that affect only individual Class Members.  Questions of law and fact common to each Class Member include:

    a.  Whether Brinks continued billing and accepting payments from consumers for Brinks Messaging after Brinks discontinued use of the text messaging service constituted unfair, deceptive, or unconscionable practices;

    b.  Whether Brinks' failure to deliver the services offered by Brinks Messaging to its customers constituted a breach of contract; and

    c.  Whether Brinks has been unjustly enriched by soliciting and accepting consumers' payments for Brinks Messaging after discontinuing the service.

Typicality

35.     Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

36.     Brinks began charging Plaintiff a fee for Brinks Messaging in 2018 and has continued charging him the fee monthly to date despite the service being discontinued by Brinks no later than March 2019.

37.     This same unfair and deceptive conduct was experienced by all Class Members. Defendants' unlawful, unfair, and/or fraudulent actions toward all Class Members involve the same business practices described in this Complaint, irrespective of where they occurred or were experienced.

7

38.     Plaintiff and each Class Member sustained similar injuries arising out of Defendants' conduct.

39.     The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.

<u>Adequacy</u>

40.     Plaintiff will fairly and adequately protect the interests of the Class.

41.     Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class.

42.     Plaintiff has retained competent and experienced class action attorneys to represent his interests and those of the members of the Class.

<u>Superiority</u>

43.     There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

44.     The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of other Class Members' rights and the disposition of other Class Members' interests through actions to which they were not parties.

45.     Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

46.     Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or

impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

47.     Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

48.     The preceding paragraphs establish that this matter satisfies the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure, and the case may proceed as a class action under Rule 23(b)(3) because questions of law or fact common to each Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>Declaratory and Injunctive Relief</u>

49.     Defendants have acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate final declaratory and injunctive relief with respect to the Rule 23(b)(2) Class as a whole.  Such relief will provide a remedy for Defendants' uniform acts and omissions toward the Rule 23(b)(2) Class.

**FIRST CAUSE OF ACTION**
**<u>NEW YORK GENERAL BUSINESS LAW § 349</u>**
**(UNLAWFUL DECEPTIVE ACTS AND PRACTICES)**

50.     Plaintiff repeats and realleges each and every allegation contained above as though set forth here in full.

51.     Each of the deceptive acts and practices set forth above, constitute violations of New York General Business Law § 349 independent of whether these acts and practices constitute violations of any other law, including common law.

52.     These deceptive acts and practices were committed in the conduct of business, trade, or commerce or the furnishing of a service in this state.

53.     Defendants' deceptive acts and practices were consumer oriented.

54.     Defendants' conduct was not a unique, one-time occurrence without possibility of replication, or recurrence and without implication for the broader consuming public.

55.     Rather, Defendants regularly charged consumers for Brinks Messaging after they had discontinued/deactivated the service and continue to do so.

56.     The deceptive conduct of which Plaintiff and the Class Members are victims is highly capable of repetition, occurred on a repetitive basis, and may occur in the future on a repetitive basis.

57.     Defendants' practice of charging Plaintiff and the Class Members for a service which the Defendants' had previously discontinued/deactivated, was materially misleading and demonstrates bad faith and willfulness.

58.     As a result of these violations of New York General Business Law § 349, Plaintiff and the Class Members have suffered actual damages.

59.     For these reasons, Plaintiff and the Class Members are entitled to actual damages, declaratory judgment, declaratory relief that Defendants have violated New York General Business Law § 349, an injunction against the deceptive practices set forth herein, three times actual damages up to $1,000, punitive damages, costs, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## <u>NEW YORK GENERAL BUSINESS LAW § 350</u>
## (FALSE ADVERTISING)

60.     Plaintiff repeats and realleges each and every allegation contained above as though set forth here in full.

61.     Defendants' false representations regarding Brinks Messaging constitute violations of New York General Business Law § 350 independent on whether these representations violate any other state or federal law or give rise to any other common law violation.

62.     With regard to the false written representations, Defendants' contracts with Plaintiff and the Class Members, as well as the invoices and billing statements, represent and/or are plausibly understood by a reasonable consumer to mean that Defendants were providing the Brinks Messaging service.

63.     Alternatively, the failure to state on invoices and billing statement that the service had been discontinued constituted a material omission.

64.     Defendants' false advertising for Brinks Messaging was committed in the conduct of business, trade, or commerce or the furnishing of a service in this state.

65.     Defendants knew these misrepresentations and/or material omissions to be false and inaccurate, and engaged in this misconduct to, *inter alia*, encourage consumers to agree to and pay for a service that didn't exist.

66.     Defendants' false advertising was done knowingly and willfully and committed in bad faith.

67.     As a result of these violations of New York General Business Law § 350, Plaintiff and the Class Members have suffered actual damages.

68.     For these reasons, Plaintiff and the Class Members are entitled to actual damages, declaratory judgment, declaratory relief that Defendants have violated New York General Business Law § 350, an injunction against the deceptive practices set forth herein, three times actual damages up to $10,000, punitive damages, costs, and reasonable attorneys' fees

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

69.     Plaintiff repeats and realleges each and every allegation contained above as though set forth here in full.

70.     Plaintiff and the Class Members entered into contractual agreements with Defendants.

71.     Pursuant to their contractual agreements with Plaintiff and the Class Members, Defendants agreed to provide Brinks Messaging.

72.     Defendants discontinued/deactivated Brinks Messaging no later than March 2019 and subsequently failed to provide Brinks Messaging to Plaintiff and the Class Members, despite charging them for the service.

73.     As a direct and proximate result of Defendants' breaches of contract, Plaintiff and the Class suffered damages.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

74.     Plaintiff repeats and realleges each and every allegation contained above as though set forth here in full.

75.     Upon information and belief, beginning no later than March 2019, Defendants discontinued/deactivated Brinks Messaging and failed to provide the service Plaintiff and the Class Members paid for.

76.     Defendants have profited and benefited from charging Plaintiff and the Class Members for Brinks Messaging.

77.     By charging Plaintiff and the Class Members for services that had been deactivated/discontinued, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

78.     Equity and good conscience require that Defendants pay restitution to Plaintiff and the Class Members for the amounts charged for Brinks Messaging.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and the Class Members respectfully request that this Court provide the following relief:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

B. A judgment declaring that Defendants have committed the violations of law alleged in this Class Action Complaint and an injunction forbidding any future violations;

C. An award of actual damages, statutory damages, punitive damages, treble damages. attorney's fees and costs, as well as pre- and post- judgment interest as provided by law;

D. Such other and further relief that may be just and proper.

*[signatures on next page]*

June 2, 2020

Respectfully,


SCHLANGER LAW GROUP LLP


*/s/Daniel A. Schlanger*
Daniel A. Schlanger
Evan S. Rothfarb
9 East 40th Street
Suite 1300
New York, NY 10016
T. (212) 500-6114
F. (646) 612-7996
dschlanger@consumerprotection.net
erothfarb@consumerprotection.net


*/s/Beth Terrell*
Beth Ellen Terrell (to apply *pro hac vice*)
Ben Drachler (to apply *pro hac vice*)
Terrell Marshall Law Group PLLC
936 N 34th St., Suite 300
Seattle, WA 98103
T. (206) 816-6603
F. (206) 319-5450
bterrell@terrellmarshall.com
bdrachler@terrellmarshall.com